UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| | * | |
| VERSUS | * | NO. 15-154 |
| | * | |
| EVANS LEWIS, ET AL | * | SECTION: "A" |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL IMMEDIATE DISCOVERY MANDATED BY BRADY V. MARYLAND RELATED TO CONTRADICTORY AND INCONSISTENT STATEMENTS BY THE GOVERNMENT'S STAR WITNESS

Undersigned counsel respectfully request that this Court order the Government to make the following disclosures pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995), and Rule 16 of the Federal Rules of Criminal Procedure.

*Inmate Letter (Bates Number 3988-3991) – Inconsistent Statements by Gregory "Rabbit" Stewart regarding the Murders of Lester Green and Michael Marshall*

In a discovery disclosure provided on December 10, 2016, the Government provided handwritten notes from an inmate, labeled, "[REDACTED] notes provide to AUSA 2/25/13". Exhibit A. The letter recounts descriptions of three of the homicides in this case provided by Gregory Stewart to the inmate who wrote the letter. The Government provided no information concerning the authorship or provenance of the letter or any reports or memoranda concerning further investigation or interviews with the author of the letter or other witnesses, notwithstanding requests from counsel and the fact that the letter reveals significant inconsistencies with the charges based on other information provided by Gregory Stewart, the

Government's star witness who provided the information to the Government on which this prosecution is based.[1]

Concerning the May 19, 2010 murder of Lester Green and shooting of Jamal Smith, included as Overt Act 22 to Count 1 and Counts 14, 15, 16, and 17 in the superseding indictment, the letter states the following:

> Mal [Jamal Smith] went to see his P.O. at Tulane. Lee [Leroy Price] seen Mal and Nell [Parnell Watts] too. Lee told Nell to hold Mal there until he get back. He went got Red [Terrioues Owney] and Rat [McCoy Walker] and when they came back Shawn and Nell was done and they were talking to Mal. Lee pulled up and Nell and Shawn got in the front door bcuz if they open the slide door Mal would see Rat and Red. When they pulled off Mal seen [illegible] put his hand up and Lee blew the horn. Mal was waiting for his ride about 3 mins later a blue car pull up and he jump in the passenger seat. They pull off and Lee follow them like 4 or 5 blocks from the court house. Rat slide the door open to shoot but the gun was on safety so he jump back in the car thinkin the gun broke but when he see it on safety he jump back out and shoot thru the windshield[.] The girl jump out and rat shoot in the air so she don't look back. T-Red had the same problem the gun he had to be cocked two times before firing. He thought the gun was broke but Lee told him to cock it one more time then a bullet jump out and it started shooting but Rat had finished and told Red to come on[.] They used to 223[.] One was Breezy got that he pleaded guilty to[.] The other one was used in a lot of different shit.

Exhibit A at 3993.

According to the superseding indictment, "Lee" is the nickname for Leroy Price, "Rat" is the nickname for McCoy Walker, and "T-Red" is the nickname for Terrioues Owney. Rec. Doc. 361 at 1. According to the Third Superseding Indictment in Case No. 11-107, "Nell" is the nickname for Parnell Watts. Rec. Doc. 139 at 1. Accordingly, the account to this inmate

---

[1] In response to discovery request for information concerning this letter, the Government responded as follows: "I will provide this information at a later date, due to safety concerns. However, the witness will be made available for trial." The Government has further indicated, with respect to at least one of the authors of the letters discussed in this memorandum, that government agents interviewed the author, "but did not write a report about the interview, because the information provided by the witness was the same as the content of the letters."

2

implicated Leroy Price, McCoy Walker, Terrioues Owney, Parnell Watts, and "Shawn" in the homicide and attempted murder.

By contrast, the superseding indictment, based on Gregory Stewart's account to the Government and the grand jury, alleges that *Evans Lewis*, *Gregory Stewart,* Leroy Price, McCoy Walker, and Terrioues Owney committed the murder and attempted murder, and omits any reference to Parnell Watts, "Shawn," or any other known or unknown individuals participating in the murder. Specifically, Overt Act 22 provides, "On or about May 19, 2010, Leroy Price, aka "Lee," aka "Lumps," *Evans Lewis, aka "Easy*," Terrioues Owney, aka "T-Red," and McCoy Walker, aka "Rat," aka "Trap," *and Gregory Stewart aka "Rabbit"* shot and killed Lester Green and shot and wounded Jamal Smith, who were believed to be associated with the Calliope Housing Project gang." Rec. Doc. 361 at 13.

The statement is therefore exculpatory and material as to Evans Lewis with respect to the Lester Green and Jamal Smith shootings but is also, moreover, significant impeachment evidence against Gregory Stewart which contradicts the account he provided the Government as (1) it makes clear that he was not even present at the shooting, (2) that "Shawn" and Parnell Watts participated in the murder, and (3) that Evans Lewis was entirely absent from both the shooting and the circumstances that led to the murder.

Concerning the September 14, 2011 murder of Michael Marshall, included as Overt Act 58 to Count 1 and Counts 45, 46, and 47 in the superseding indictment, the letter states the following:

> Wash [Washington McCaskill], Poonie [Curtis Neville], Leroy [Price] sat in front [illegible] of the copper shop waiting for dude to come to work. It was a hit somebody paid them to did it. When the dude pulled up they [illegible] him. Big Wash [Washington McCaskill] went to jail for one of the guns[.] The [illegible] that shoot .223 bullets. It had monkey nuts on it meaning a 100 round clip.

3

Exhibit A at 3991.

According to the indictment, "Big Wash" is the nickname for Washington McCaskill and "Poonie" is the nickname for Curtis Neville. Rec. Doc. 1 at 1. Accordingly, the account to this inmate implicated Washington McCaskill, Curtis Neville, and Leroy Price in the homicide.

By contrast, the superseding indictment, based on Gregory Stewart's account to the Government and the grand jury, alleges that *Ashton Price,* Leroy Price, and Washington McCaskill committed the murder, and omitted any reference to Curtis Neville or any other known or unknown individuals. Specifically, Overt Act 58 provides,

> On or about September 14, 2011, Washington McCaskill, aka "Big Wash," Leroy Price, aka "Lee," aka "Lumps," and *Ashton Price, aka "Pound," aka "BMG Pound,"* were in a red Toyota Corolla that was driven by Leroy Price. They followed Michael Marshall to his place of employment, located at 1741 Poland Avenue in New Orleans, Louisiana. Washington McCaskill, aka "Big Wash," while armed with a Romarm GP WASR 7.62x39 assault rifle bearing serial number 1983AH-3447, and *Ashton Price, aka "Pound," aka "BMG Pound,"* while armed with a Glock Model 23, .40 caliber semi-automatic handgun bearing serial number MVN115, exited the red Toyota Corolla and shot and killed Michael Marshall as Marshall attempted to exit his vehicle. Washington McCaskill, aka "Big Wash," Leroy Price, aka "Lee," aka "Lumps," and *Ashton Price, aka "Pound," aka "BMG Pound,"* fled the scene of the murder in the red Toyotta Corolla.

Rec. Doc. 361 at 21.

The statement is therefore exculpatory and material as to Ashton Price with respect to the Michael Marshall homicide but is also, moreover, significant impeachment evidence against Gregory Stewart as it contradicts the account he provided the Government and which is reflected in the indictment.

Consequently, the defendants must be provided information regarding the identity of the author of the letter and the circumstances and provenance of the letter including the date it was received by the United States Attorney's Office and the manner in which it was received. Just as

4

significantly, the defendants are entitled to the contents of any interviews between the author of the letter and the Government or law enforcement that provided information consistent with the letter or any information otherwise inconsistent with the Government's charges in this case. This includes any police reports, FBI-302 reports, or DEA-6 reports that in any way address the inconsistencies that arise in the letter including (1) interviews with the author of the letter, (2) interviews with Gregory Stewart concerning his statements to the author of the letter or regarding the Lester Green or Michael Marshall homicides, and (3) interviews with Parnell Watts, "Shawn," or anyone else implicated in the letter concerning Lester Green or Michael Marshall homicides. To be clear, the Government must provide the contents of any such interviews whether or not it has been memorialized or if these details were included in any 302 or other report, including the date and location of the interview, the identities of the individuals present for the interview, the contents of the interview, and any notes taken during the interview by the investigator.

### *Inmate Letter (Bates Numbers 3992-3994) – Inconsistent Statements by Gregory "Rabbit" Stewart regarding the Murders of Kendall Faibvre and Terrance Dennis*

In a discovery disclosure provided on December 10, 2016, the Government provided a handwritten letter from inmate, which begins, "I am in jail with (Rabbit) AKA Gregory Stewart, Derrick, T-Red and (Real) AKA Jasmine Perry". Exhibit B. The Government provided no information concerning the authorship or provenance of the letter or any reports or memoranda concerning further investigation or interviews with the author of the letter or other witnesses, notwithstanding requests from counsel and the fact that the letter reveals significant inconsistencies with the charges based on other information provided by Gregory Stewart.[2]

---

[2] In response to discovery request for information concerning this letter, the Government responded as follows: "I will provide this information at a later date, due to safety concerns. However, the witness will be made available for trial."

Concerning the February 22, 2010 murder of Kendall Faibvre on Bunkerhill Road in New Orleans East, included as Overt Act 13 to Count 1 and Counts 4, 5, 6, and 7 in the superseding indictment, the letter states the following:

> Also I was asking Rabbit who fuck that lil dude up in the East. He was like who? Where? I said John John friend who was in Bunkerhill in that green Monte Carlo. He said my friends Pound [Ashton Price], Poonie [Curtis Neville] and Real [Jasmine Perry]. I was like that nigga had something to do with Drecka baby-daddy Percy they got him in a wheel chair. Rabbit said yeah Pound, Poonie and Real fucked that nigga up too. Real and Poonie was in a Honda truck. Poonie was in a F-150 truck. They was parked on each end of the block. He said that dude got in the car with a girl when he pulled off Real pulled off from in front of him and when they came to the stop sign Real stopped for a long time so dude was blowin his horn but Real was waiting until Pound can get behind him. Real and Poonie jumped out and shot the front glass when Pound jumped out and shot and killed dud and hit the girl one time. He said "Rabbit" it was retaliation because Percy got shot and that's Pound friend. They used two AK-47 and one Glock 9mm. Pound had a AK-47. Real had a Glock 9mm and Poonie had AK-47.

Exhibit B at 3993.

According to the superseding indictment, "Poonie" is the nickname for Curtis Neville, "Pound" is the nickname for Ashton Price, and "Real" is the nickname for Jasmine Perry. Rec. Doc. 361 at 1. Accordingly, Gregory Stewart's account to this inmate implicated Curtis Neville, Ashton Price, and Jasmine Perry in the homicide.

By contrast, the superseding indictment, based on Gregory Stewart's account to the Government and the grand jury, alleges that *Alonzo Peters, rather than Curtis Neville*, committed the murder with Price and Perry. Rec. Doc. 361 at 28-30. Specifically, Overt Act 13 provides, "On or about February 22, 2010, Ashton Price, aka "Pound," Alonzo Peters, aka "Woo-dee," Jasmine Perry, aka "J-Real," aka "Rell," and Gregory Stewart shot and killed Kendall Faibvre, who was believed to be an associate of the Press Park gang." Rec. Doc. 361 at 11.

6

The statement is therefore exculpatory and material as to Alonzo Peters with respect to the Kendall Faibvre homicide but is also, moreover, significant impeachment evidence against Gregory Stewart which contradicts the account he provided the Government and which is reflected in the indictment.

Concerning the February 19, 2011 murder of Terrance Dennis, included as Overt Act 42 to Count 1, and Counts 27 and 28, the letter states as follows:

> The murder that happened leaving Plucky funeral was on Galvez in the 8th Ward. Real seen one of the lil dudes that shot Easy by the Sportsvue. Brother [Darryl Franklin] told him handle that[.] Brother pulled over and let Real [Jasmine Perry] out with the 223[.] Real ran dude thru the backyard and killed him.

Exhibit B at 3994.

Earlier in the letter, the writer described an exchange between Jasmine Perry and Gregory Stewart concerning the Dennis homicide: "Then Real said you know my work you seen what I'm about the day of Plucky funeral. Then Rabbit said Brother made you do that plus that was a lil boy you killed fake ass." Exhibit B at 3992.

Both of these accounts, with Jasmine Perry being driven in a car by Darryl Franklin, known as "Brother," who told Perry to shoot Dennis, are at odds with the Government's account of the murder:

> On or about February 19, 2011, Darryl Franklin, aka "Brother," aka "Breezy," *Ashton Price, aka "Pound," aka "BMG Pound,"* and Jasmine Perry, aka "J-Real," aka "Real," were driving in a vehicle together when they spotted Terrance Dennis, who was an associate of the Ride or Die gang, near the 2300 block of North Galvez Street. *Ashton Price, aka "Pound," aka "BMG Pound," directed* Jasmine Perry, aka "J-Real," aka "Rell," to get out of the vehicle and shoot Dennis. Jasmine Perry exited the vehicle with a Bushmaster .223 assault rifle bearing serial number BFI590140 and referred to by other 39er gang members as "Monkey Nuts," chased Dennis down the street, and shot and killed him. *Ashton Price, aka "Pound," aka "BMG Pound," then drove the vehicle* to pick up Perry, and then they fled the scene.

Rec. Doc. 361 at 18 (emphasis supplied).

7

Significantly, the account provided by Gregory Stewart and Jasmine Perry to the inmate who wrote the letter includes only Darryl Franklin and Jasmine Perry, with Franklin ordering the murder and driving and Perry acting as the shooter, and excluded Ashton Price altogether as either the driver or present at all.

The statement is therefore exculpatory and material as to Ashton Price with respect to the Terrance Dennis homicide but is also, moreover, significant impeachment evidence against Gregory Stewart and Darryl Franklin which contradicts the account they provided the Government and which is reflected in the indictment.[3]

Consequently, the defendants must be provided information regarding the identity of the author of the letter and the circumstances and provenance of the letter including the date it was received by the United States Attorney's Office and the manner in which it was received. Just as significantly, the defendants are entitled to the contents of any interviews between the author of the letter and the Government or law enforcement that provided information consistent with the letter or any information otherwise inconsistent with the Government's charges in this case. This includes any police reports, FBI-302 reports, or DEA-6 reports that in any way address the inconsistencies that arise in the letter including (1) interviews with the author of the letter, (2) interviews with Gregory Stewart concerning his statements to the author of the letter or regarding the Kendall Faibvre or Terrance Dennis homicides, (3) interviews with Darryl Franklin concerning the Terrance Dennis homicide, and (4) interviews with anyone else that corroborates Curtis Neville's participation in the Faibvre homicide or excludes Ashton Price from the Terrance Dennis homicide, or which otherwise contradicts the Government's account of the

---

[3] Darryl Franklin is also a cooperating Government witness in this case. Presumably, Franklin has provided a similar account to the version of the homicide charged in the indictment and offered by Gregory Stewart. Of course, if Franklin's version contradicts the allegations in the indictment in any way or if it varies from Stewart's account, his statements concerning the incident are *Brady* evidence and must be disclosed.

8

homicides. To be clear, the Government must provide the contents of any such interview whether or not it has been memorialized or if these details were included in any 302 or other report, including the date and location of the interview, the identities of the individuals present for the interview, the contents of the interview, and any notes taken during the interview by the investigator.

### *The Defendants Are Entitled to Immediate Disclosure of the Requested Information concerning these Witness Statements*

Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure addresses the discovery of documents and tangible objects. Under Rule 16(a)(1)(C), the government must permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, if the requested items: (1) are material to the preparation of the defendant's defense; (2) are intended for use by the government as evidence in chief at the trial; or (3) were obtained from or belong to the defendant.

While Rule 16(a)(1)(C) only refers to materials within the "possession, custody, or control of the government," the Fifth Circuit has expounded that the "possession, custody, or control of the government" requirement includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor. *United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir. 1978).

Moreover, prosecutors have an affirmative duty to disclose evidence that is both favorable to the defendant and material to either guilt or punishment. *See Brady*, 373 U.S. at 87. In *Brady v. Maryland*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

9

the prosecution." 373 U.S. at 87. In addition to providing information in its custody, the Government has an affirmative duty to seek out favorable evidence "known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995). In *Giglio*, the Supreme Court held that a prosecutor's duty to disclose favorable evidence to the defense extends to evidence that would impeach a government witness. 405 U.S. at 154–55.

The Fifth Circuit has noted that obligation of the prosecution to produce Brady information should be interpreted broadly. Explaining on the interplay between Rule 16 and *Brady*, one commentator has said:

> Liberality in passing on discovery motions under [Federal Rule 16] … would be consistent with the Supreme Court's recognition that 'disclosure, rather [than] suppression, of relevant materials ordinarily promotes the proper administration of criminal justice.

4 Barron & Holtzoff, Federal Practice and Procedure at 65, quoting from *Dennis v. United States*, 384 U.S. 855, 869 (1966); *United States v. White*, 450 F.2d 264, 268-69 (5th Cir. 1971).

The Fifth Circuit has interpreted *Brady* to require the government "to produce *at the appropriate time* requested evidence which is materially favorable to the accused either as direct or impeaching evidence." *Williams v. Dutton*, 400 F.2d 797, 800 (5th Cir. 1968) (emphasis supplied). Courts have suggested that the "appropriate time" for discovery is far enough in advance of trial to allow defense counsel to make effective use of the information:

> It should be obvious to anyone involved with criminal trials that exculpatory information may come too late if it is only given at trial, and that the effective implementation of *Brady v. Maryland* must therefore require earlier production in at least some situations.

*United States v. Deutsch*, 373 F.Supp. 289, 290 (SDNY 1974). *See, e.g.*, *United States v. Pollack*, 534 F.2d 964, 973-74 (DC Cir. 1966); *United States v. Houston*, 339 F.Supp. 762, 764

10

(NDGA 1972); Note, The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant, 74 Yale L.J. 136, 145 (1964). *Cf. United States v. Pollack,* 534 F.2d 964, 973 (DC Cir. 1976) ("disclosure by the government must be made at such time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case . . ..")

The Fifth Circuit has made clear that in order to comply with due process and fundamental fairness, the prosecution must make *Brady* disclosures timely enough for a defendant to put the information "to effective use at trial." *United States v. McKinney*, 758 F.2d 1036, 1049-50 (5th Cir. 1985); *United States v. Nixon,* 634 F.2d 306, 311–13 (5th Cir. 1981) (information about immunity agreement with Government witness should have been disclosed prior to trial); *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir. 1979) (disclosure of witness' grand jury testimony containing exculpatory statements disclosed on day before trial was "tardy"). The Fifth Circuit has likewise held, while under normal circumstances the timing of a prosecutor's obligation to disclose under *Brady* is coterminous with the obligation to produce under Jencks, *Brady* would override Jencks in cases where lack of pretrial discovery resulted in prejudice to the defendant "of substantial due process character." *United States v. Harris*, 458 F.2d 670, 675 (5th Cir. 1972). *See also United States v. Fisher*, 106 F.3d 622, 634-35 (5th Cir. 1997) (reversing conviction following late disclosure of impeaching witness statements); *Gantt v. Roe*, 389 F.3d 908, 912 (9th Cir. 2004) ("The evidence the prosecution failed to disclose here surely satisfies the low 'favorable to the accused' standard. That these pieces of information were found (or their relevance discovered) only in time for the last day of testimony underscores that disclosure should have been *immediate:* Disclosure must be made 'at a time when [it] would be of value to the accused.'")

For these reasons, Evans Lewis and Alonzo Peters respectfully requests an order from this Court ordering the Government to immediately disclose any and all evidence in its possession relating to the inmate letters recounting inconsistent statements from cooperating Government witnesses regarding the Lester Green, Michael Marshall, Kendall Faibvre and Terrance Dennis homicides, as detailed herein and in the proposed order.

Respectfully submitted,

/s/ *William Sothern*
WILLIAM SOTHERN, La. Bar 27884
Law Office of William M. Sothern
3015 Magazine Street
New Orleans, LA 70115
(504) 581-9083
billy@connersothern.com

*Attorney for Evans Lewis*

/s/ *David J. Rozas*
DAVID J. ROZAS, La. Bar. No. 29505
ROZAS AND ROZAS LAW FIRM, LLC
758 Royal Street
Baton Rouge, LA 70802
(225) 343-0010
david@rozaslaw.com

*Attorney for Alonzo Peters*

**CERTIFICATE OF SERVICE**

This certifies that I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system that will send a notice of electronic filing to all counsel of record on the 16th of August, 2016.

/s/ *William Sothern*
WILLIAM SOTHERN, La. Bar 27884